UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X
RICARDO KIMBLE,

                    Petitioner,        05 Civ. 8161 (SHS)(DFE)

        - against –                    REPORT AND RECOMMENDATION
                                       TO JUDGE STEIN
WILLIAM BROWN, Superintendent of
Eastern Correctional Facility,

                    Respondent.
--------------------------------X

DOUGLAS F. EATON, United States Magistrate Judge.

        The pro se habeas corpus petition of Ricardo Kimble
challenges the fairness of a suppression hearing before Justice
Arlene Silverman and a trial before Justice Bonnie Wittner in
Supreme Court, New York County in 2000.  Kimble testified in both
proceedings.  The jury found him guilty of the following crimes:
Criminal Possession of a Controlled Substance in the First and
Third Degrees; Criminal Possession of a Weapon in the Second and
Third Degrees.  Kimble was a second violent felony offender.
Justice Wittner imposed concurrent sentences, including 18 years
to life for the first-degree possession of eight ounces of
cocaine, and 10 years for second-degree possession of a loaded
handgun.

        Kimble was represented by Barry Teller during the
suppression hearing and trial.  Kimble was represented by
Jonathan Swetkey during post-trial motions and sentencing.  On
appeal, Kimble was represented by Cynthia Feathers of the Center
for Appellate Litigation.  The Appellate Division unanimously
affirmed the conviction.  People v. Kimble, 302 A.D.2d 207, 756
N.Y.S.2d 141 (1st Dept. 2003).  On June 20, 2003, Chief Judge
Kaye denied leave to appeal to the New York Court of Appeals.
100 N.Y.2d 563, 763 N.Y.S.2d 820 (Ct. App. 2003).

        On August 11, 2003, Kimble filed his first pro se motion to
vacate the judgment pursuant to New York Criminal Procedure Law
("CPL") § 440.10.  (Exh. F.)  (All references to "Exh. _" refer to
one of the exhibits to the 1/31/07 declaration of Assistant
Attorney General ("AAG") Alyson J. Gill.)  Kimble argued that Mr.
Teller had given ineffective assistance in that he should have
won the suppression motion.  On November 7, 2003, the § 440.10
motion was denied by Justice Wittner (Exh. H), "based on People's

                                -1-

affirmation in response to defendant's motion to vacate the judgment" (Exh. G.)  On August 20, 2004, Kimble moved to appeal that denial to the Appellate Division (Exh. I); on February 8, 2005, his application was denied. (Exh. J.)

Meanwhile, on or about August 3, 2004, Kimble filed a second pro se motion to vacate the judgment pursuant to CPL § 440.10. (Exh. K.)  He enclosed what he called "newly discovered evidence" – – a 5/4/04 affidavit from Herbert Rogers, who was his co-defendant until pleading guilty just before jury selection.  At the September 2000 trial, Rogers had offered to testify for Kimble, but then invoked the privilege against self-incrimination.  The Rogers affidavit says he felt threatened by Justice Wittner's warnings about his possible criminal exposure. (Exh. K.)  This second § 440.10 motion was denied by Justice Wittner on March 25, 2005; she had denied a similar motion made by Kimble on October 12, 2000, and she now wrote:  "No new evidence or law."  (Exh. L.)  On May 5, 2005, Kimble moved to appeal that denial to the Appellate Division (Exh. M); on August 11, 2005, his application was denied. (Exh. N.)

On August 29, 2005, Kimble mailed his habeas corpus petition to our Court.  He acted within the one-year statute of limitations even though there had been a gap of 9 months between November 7, 2003 and August 3, 2004.  On January 31, 2006, Kimble asked me to hold his petition in abeyance so that he could pursue a writ of coram nobis in state court.  By orders dated May 10, 2006 and November 16, 2006, I stayed the petition and permitted Kimble to file an amended habeas petition if he turned out to be unsuccessful on coram nobis.

On February 14, 2006, Kimble filed a pro se petition for a writ of coram nobis, alleging that Ms. Feathers had been an ineffective appellate counsel.  (Exh. O.)  He asserted that her 2002 brief should have argued that Justice Wittner interfered with Mr. Teller's calling Rogers as a defense witness.   On June 15, 2006, the Appellate Division denied coram nobis without stating any reasons.  (Exh. P.)  On October 31, 2006, leave to appeal that denial to the New York Court of Appeals was denied. (Exh. Q.)

On December 12, 2006, Kimble returned to our Court and filed an amended habeas petition and a supporting Memorandum of Law. On January 31, 2007, AAG Gill served (a) a 37-page Memorandum of Law, (b) a Declaration annexing Exhs. A through Q, and (c) two

volumes of transcripts from the state court proceedings.  (I
shall refer to the transcript of the suppression hearing as "H."
and the trial transcript as "Tr."; the transcript of Rogers's
guilty plea is provided by Exh. K at sub-exhibit "D.")


On February 21, 2007, Kimble filed a 7-page reply
affirmation.  His reply was well-written, as were his other
filings.


I shall now quote the four grounds as listed in the amended
petition:


Ground One:  When the trial court interfered with counsel in
calling codefendant as a defense witness, the court
interfered with counsel's duties, thereby denied petitioner
his right to counsel and due process of law to have a fair
trial.


Ground Two [essentially the same as Ground One]:  The trial
court's interference with counsel calling codefendant as a
defense witness served to infringe upon petitioner's right
to due process of law to have a fair trial and compulsory
process.


Ground Three:  Appellate counsel's failure to raise the
viable claim that petitioner was denied his right to counsel
when the trial court interfered with counsel's performance
and by doing so, also denied petitioner due process of law
and compulsory process, deprived him of effective assistance
of counsel on his direct appeal.


Ground Four:  Trial counsel was ineffective when he failed
to properly litigate petitioner's right to be free from
illegal searches and seizures.


For the reasons stated below, I recommend that Judge Stein
deny Kimble's petition.

FACTUAL AND PROCEDURAL BACKGROUND

The suppression hearing

Justice Arlene Silverman held a 3-day suppression hearing
(H. 1-566) attended by Kimble, his co-defendant Herbert Rogers,
and their attorneys.  The prosecutor produced testimony from
Police Sergeant Brett Weingarten and Police Officer Frank Galan
(and from Detective Antonio Rivera as to post-arrest statements).
The defendants produced testimony from Kimble and from Police
Officer Randy Gaines.  After extensive oral arguments (H. 523-
60), Justice Silverman denied the suppression motions and stated
her reasons at H. 560-62.  She stated that she believed the
testimony of the officers, who testified as follows (Sgt.
Weingarten at H. 12-190, and Officer Galan at H. 191-310):

On January 10, 1999, they were working on anti-crime patrol
in an unmarked car.  (H. 13-16.)  They observed a Jeep Cherokee
parked on West 143rd Street.  (H. 17-18, 74.)  As part of a
random check, they ran a computer check of the plate number.  (H.
19, 74.)  The computer check determined that the license plate
belonged to a "1997 white four-door Dodge."  (H. 28.)  Since that
description did not match the Jeep, they believed the Jeep to be
stolen.  (H. 28-29, 82-83.)

Weingarten approached on the passenger's side, where Rogers
was seated.  Galan questioned Kimble, who was in the driver's
seat; Galan obtained drivers licenses from both men, as well as a
rental agreement for the Jeep.  (H. 29-31.)  Weingarten confirmed
that the Jeep matched the description listed on the rental
agreement.  He ran a computer check on the vehicle identification
number and learned that the Jeep had not been reported as stolen.
(H. 34-36.)  He said that "everything [is] valid."  (H. 206.)

However, Galan noticed that the rental agreement did not
list Kimble as an authorized driver.  (H. 197-98, 206.)  Galan
told Kimble: "It's a good idea that you guys should switch
[seats]."  (H. 206-07.)  As they did so, Galan noticed the gun on
Kimble's hip, grabbed it, put Kimble against the car and
handcuffed him.  (H. 43-44.)  Weingarten then handcuffed Rogers.
(H. 44-45.)  Weingarten searched the car and found more than

-4-

eight ounces of cocaine, a digital scale, and $14,000 in cash.
(Tr. 99-100.)

### The guilty plea by Rogers

After the suppression ruling, the case was assigned to
Justice Wittner.  On September 6, 2000, just before jury
selection, the co-defendant Rogers accepted a plea bargain - - an
offer of 9 years to life in return for a guilty plea to Criminal
Possession of a Controlled Substance in the Second Degree (one
degree below the top count) and an allocution that Kimble was
also involved in possessing the cocaine.  Rogers was placed under
oath before Justice Wittner.  (Exh. K at sub-exhibit "D," Plea
Tr. 2.)  Kimble's attorney was present at least during Plea Tr.
6-13, and Kimble was present at least during Plea Tr. 7-13.  On
second call, at Plea Tr. 16, Rogers said in part: "Mr. Kimble and
I came to the City of New York, and I told him that when I get
there, I am going to make a purchase of cocaine.  I purchased - -
I purchased some cocaine.  He knew I had done that.  And he was
there to assist me."

### The trial of Kimble

On September 11, 2000, near the start of his opening
statement, Kimble's attorney Barry Teller told the jury:  "Mr.
Rogers was indicted in this case.  Mr. Ro[]gers ple[]d guilty to
the drugs in this case."  (Tr. 23.)  The judge interrupted, held
a sidebar conference and temporarily excused the jury.  (Tr. 23-
24, 29.)  Quite understandably, the judge (who had heard Rogers
incriminate Kimble under oath) wanted to make sure whether Rogers
was making a knowing decision to tell the jury that Kimble was
innocent.  She waited until Rogers and his attorney could be
brought to the courtroom (Tr. 36) and then she gave them time to
confer.  (Tr. 43-44.)  Outside the presence of the jury, she
called Rogers to the stand and put him under oath.  (Tr. 46-49.)
The 5/4/04 Rogers affidavit (Exh. K at sub-exhibit "C") claims
that the judge's comments and questions at Tr. 45-49 made him
feel threatened and eventually caused him not to testify.
However, the fact remains that Rogers left the courtroom that day
(Tr. 49) having clearly stated that he would testify for Kimble
(Tr. 47-49).

The judge then allowed Mr. Teller to resume his opening
statement, which included the following:

-5-

We are going to bring in the person whose drugs
these were . . . He will tell you they were his drugs.
He will tell you he was in the car with Kimble, Ricardo
Kimble, but he will tell you they were his drugs.  They
were not Kimble's drugs . . . The car was rented by the
girlfriend of Rogers, the other defendant in the case.
Okay.  That is who the car was rented by.  The second
driver of the car on the contract was Rogers . . .
Ro[]gers is going to tell you really what happened that
day in that car.  He is going to tell you what he did,
and what he ended up doing as far as taking the plea in
the case.  (Tr. 61-63.)


Two days later, on the morning of September 13, 2000,
counsel for Rogers informed the judge that Rogers was
"equivocating" about whether he would testify for Kimble.  (Tr.
273.)  The judge then allowed Mr. Teller to confer with Rogers;
Mr. Teller did so, and then Rogers's counsel announced that
Rogers had decided that he did not want to testify and would
invoke the Fifth Amendment.  (Tr. 274.)  Mr. Teller did not
object to this development.


The jury heard only one defense witness, Kimble himself.
(Tr. 279-339.)  Kimble admitted that he brought a handgun before
driving with Rogers from Long Island to Manhattan.  (Tr. 290.)
However, he thought that Rogers was purchasing some jewelry.
(Tr. 309.)  Kimble testified that he did not know about the
existence of the cocaine until the officer searched the car and
discovered it.  (Tr. 290, 296.)


On summation, Mr. Teller argued that Kimble was guilty
solely of Criminal Possession of a Weapon in the Third Degree.
(Tr. 348.)  However, the jury found Kimble guilty on all four
counts submitted to the jury.


The post-trial motion and the sentence


On October 12, 2000, Kimble made a pro se motion under CPL
§ 330.30 to set aside the verdict on three grounds.  Point 3
argued that the judge had intimidated Rogers and prevented him
from testifying for Kimble.  It cited several cases, including
Webb v. Texas, 409 U.S. 95, 93 S.Ct. 351 (1972).  That Point 3
portion of the October 12, 2000 motion is annexed to my
Memorandum and Order dated November 7, 2005.

On November 9, 2000, Justice Wittner denied the § 330.30 motion. (Sent. Tr. 2-5.) Kimble then admitted that he was a second violent felony offender. (Sent. Tr. 6-8.) He received four sentences, all concurrent: 18 years to life for Criminal Possession of a Controlled Substance in the First Degree; 12 ½ to 25 years for Criminal Possession of a Controlled Substance in the Third Degree; 10 years for Criminal Possession of a Weapon in the Second Degree; and 7 years for Criminal Possession of a Weapon in the Third Degree.

## The direct appeal

The Appellate Division heard the appeals of Kimble and Rogers and ruled as follows:

> Defendants' suppression motions were properly denied. There is no basis for disturbing the court's credibility determinations, which are supported by the record [*citation omitted*]. After a lawful traffic stop, the officers determined that the defendants' licenses were valid but noted that the rental agreement for the car in which the defendants were riding listed defendant Rogers as a secondary driver and did not list defendant Kimble, who was in the driver's seat, as an authorized driver. The officer suggested that the defendants switch seats and defendant Kimble agreed. As Kimble stepped out of the vehicle, the officer noticed a gun clipped to his waistband. Both defendants were arrested and a search of the vehicle yielded large amounts of cash and drugs.

> Defendants' current contention (that the officer's suggestion that they switch seats constituted an illegal seizure) was neither raised nor ruled upon at the suppression hearing and is therefore not preserved [*citations omitted*], and we decline to review it in the interest of justice. Were we to review this claim, we would find that the record does not support defendants' contention that the officer's action was coercive or that they merely succumbed to authority. The officer did not draw his gun and his tone and choice of words was not accusatory. He did not state that the defendants were required to switch seats, only that it was "a good idea" and in Kimble's "best interest" that they switch.

The search of the vehicle was permissible under the automobile exception to the requirement of a search warrant.  In the circumstances of this case, the police were justified in searching the vehicle for contraband related to the gun possessed by defendant Kimble or for additional weapons [*citations omitted*].

The verdict convicting Kimble of criminal possession of a controlled substance in the first and third degrees and criminal possession of a weapon in the second degree was not against the weight of the evidence.  There is no basis for disturbing the jury's determinations concerning credibility, including its rejection of Kimble's testimony explaining his presence in the vehicle and his possession of the weapon.

Exh. C; *People v. Kimble*, 302 A.D.2d 207, 208, 756 N.Y.S.2d 141, 142-43 (1st Dept. 2003).

<u>DISCUSSION OF KIMBLE'S AMENDED PETITION</u>

I shall now discuss the grounds in the amended petition, but I will start with Ground Four.

<u>A.  The claim that trial counsel gave ineffective assistance at the suppression hearing</u> (Ground Four)

In his original petition at ¶12, Kimble asserted: "Ineffective assistance of Counsel.  Counsel failed to raise the issue of [t]he search and seizure being [i]llegal and did not afford the defendant a fair opportunity [t]o litigate this important issue prior to trial."  That assertion was omitted from Kimble's amended petition in December 2006.  The omission was wise, and it was also deliberate; see Kimble's February 21, 2007 Reply Affirmation at ¶10:  "[R]espondent contends that I was afforded a full and fair opportunity to litigate the violation of my Fourth Amendment right, yet that was not an issue I raised in my [amended] petition, nor an argument I advanced in my memorandum of law."

The amended petition (at Ground Four) repackages the claim

that Mr. Teller provided ineffective assistance at the suppression hearing. At the lengthy suppression hearing, Mr. Teller (in conjunction with Rogers's counsel) presented many arguments, but Kimble asserts that they failed to make the best argument, namely the argument that Ms. Feathers made to the Appellate Division (Exh. A, pp. 14-17) - - the argument that Officer Galan's suggestion that the defendants switch seats amounted to a further detention after at least one officer indicated that Kimble and Rogers were free to leave. (Exh. A, p. 15.) Ms. Feathers contended that Mr. Teller sufficiently presented this argument at the hearing - - "by [his] arguments about the intimidating quality of the police action." (Exh. A, p. 17.) Moreover, Mr. Teller presented and advocated Kimble's testimony that he was given an order by Galan: "You have to get out [of] the car and let Mr. Rogers drive." (H. 384.)

True, the Appellate Division eventually ruled that Mr. Teller did not sufficiently preserve the contention that Galan's words (even as recalled by Galan) constituted an illegal seizure. But I find it unnecessary to consider whether Mr. Teller's performance was sub-standard in this regard. The U.S. Supreme Court has written: "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must **also** prove that his Fourth Amendment claim is **meritorious** . . . ." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (emphasis added).

In the case at bar, the Appellate Division went on to discuss the Fourth Amendment claim on the merits - - and made clear that it would have rejected the claim even if Mr. Teller had presented it as extensively as Ms. Feathers did. The court wrote:

> Were we to review this claim, we would find that the record does not support defendants' contention that the officer's action was coercive or that they merely succumbed to authority. The officer did not draw his gun and his tone and choice of words was not accusatory. He did not state that the defendants were required to switch seats, only that it was "a good idea" and in Kimble's "best interest" that they switch.

Exh. C; *People v. Kimble*, 302 A.D.2d 207, 208, 756 N.Y.S.2d 141, 143 (1st Dept. 2003).

Such a rejection was an entirely reasonable application of
U.S. Supreme Court precedent.  The Appellate Division was aware
that Ms. Feathers (Exh. A, p. 15) cited *United States v.
Mendenhall*, 446 U.S. 544, 554 (1980).  But that case's holding
was that Ms. Mendenhall voluntarily accompanied two DEA agents
from an airport concourse to their office.  Moreover, *Mendenhall*
shows that a Fourth Amendment claim of continuing detention is a
mixed issue of fact and law that turns on nuances, including the
officer's tone of voice:

>     A person has been "seized" within the meaning of
> the Fourth Amendment only if, in view of all of the
> circumstances surrounding the incident, a reasonable
> person would have believed that he was not free to
> leave.  Examples of circumstances that might indicate a
> seizure, even where the person did not attempt to
> leave, would be the threatening presence of several
> officers, the display of a weapon by an officer, some
> physical touching of the person or the citizen, or the
> use of language or tone of voice indicating that
> compliance with the officer's request might be
> compelled.  In the absence of some such evidence,
> otherwise inoffensive contact between a member of the
> public and the police cannot, as a matter of law,
> amount to a seizure of that person.

*Mendenhall*, 446 U.S. at 554-55 (citations omitted*).*

The hearing judge rejected Kimble's testimony and accepted
that of Galan, who testified: "And then I said, 'Listen, you
know, only the person that's on the agreement or an additional
driver is the person that [is] suppose[d] to be driving the
vehicle.'  And he's agreeing to me saying, 'Yes, yes.'  I said,
'It's a good idea that you guys should switch.'"  (H. 206-07.)
The Appellate Division reasonably held that the record showed
that Galan "did not state that the defendants were required to
switch seats."  *People v. Kimble*, 302 A.D.2d 207, 208, 756
N.Y.S.2d 141, 143 (1st Dept. 2003).

Finally, Kimble cites two First Department decisions that
were cited by Ms. Feathers.  Both of those cases involved cars,
but not rental agreements.  In *People v. Thomas*, the court
stated:  "When neither the vehicle nor its occupants is under any
restraint, and the police have no grounds for suspicion of these
particular individuals, asking a car's occupants to step out of

it creates a new, unauthorized restraint . . . consequently, without additional grounds for suspicion, it is improper for police to direct occupants out of a parked car."  712 N.Y.S.2d 548, 550 (1st Dept. 2000).  In *People v. Barreras*, the First Department wrote: "Once the defendant's papers were all found to be in order, the officers, without more, were obligated to issue the stop-sign summons and allow defendant to resume his journey; *i.e.*, 'the initial justification for seizing and detaining the defendant . . . was exhausted.'"  677 N.Y.S.2d 526, 530 (1st Dept. 1998) (citations omitted).  However, that decision noted that "nothing in defendant's conduct or demeanor here provided a further basis to detain him."  *Id.*

In the case at bar, there was the additional fact that Kimble's name was not listed on the rental agreement.  It may be that this gave no further basis to detain Kimble, but it led quite naturally to the suggestion by Officer Galan that the passengers should switch seats.  According to Galan's testimony, he did not ask the car's occupants to "step out" of the car.  Kimble, who was in the driver's seat, was free to move three feet to his right and to ask Rogers to walk around to the driver's seat.  Instead, Kimble opened the door, and as he was getting out, Galan saw the handle of a gun clipped to Kimble's waist.  (H. 208.)

In short, the Fourth Amendment claim would have failed even if Mr. Teller had phrased it exactly as Kimble says he should have.  Accordingly, Ground Four of the amended petition fails.

B.  The claim that the judge interfered with Mr. Teller calling Rogers as a defense witness, and the claim that appellate counsel should have presented this issue to the Appellate Division (Grounds One, Two and Three)

In the amended petition, Grounds One and Two are essentially the same.  They claim that the trial judge interfered with Mr. Teller's calling Rogers as a defense witness.  Kimble says this deprived him of his right to counsel, due process of law, compulsory process and the ability to present a complete defense.

This argument was first raised by Kimble in his 10/12/00 motion, at Point 3.  I annexed a copy of that Point 3 at the end of my Memorandum and Order dated November 7, 2005, where I wrote:

. . . By letter dated October 18, 2005 . . . Mr.
Kimble sent me copies of:

       1.  His 10/12/00 pro se 330.30 motion to
set aside the 9/14/00 jury verdict.  This motion makes
three points.  I enclose a copy of its Point 3, which
alleged that the judge intimidated Herbert Rogers and
prevented him from testifying for the defense at
Kimble's trial.  It is my understanding that this Point
3 is now Ground 3 in the habeas petition.  **I direct Mr.
Kimble to send me, by November 22, 2005, (a) a signed
statement describing what efforts, if any, he made to
have Point 3 presented on the direct appeal, and (b) a
copy of any pro se memorandum that he submitted on the
direct appeal.**

My next Memorandum and Order, dated December 12, 2005,
reported the next development:

     In response, Mr. Kimble sent me a letter dated
November 11 and notarized on November 17.  He enclosed
the originals of the correspondence between him and his
appellate attorney Cynthia Feathers, dated from January
10, 2002 to May 16, 200[2].  At his request, I am
returning the originals to him.  I have made
photocopies which I am holding in my chambers file; it
seems unnecessary to provide them to the State Attorney
General's office, since I am providing that office with
a copy of Mr. Kimble's letter to me, which notes that
(a) he did ask his appellate attorney to look into
Point 3's allegation that the judge intimidated Herbert
Rogers, (b) he did not submit a pro se supplemental
brief, and (c) he was led to believe that this issue
did not have merit and was not worth presenting to the
Appellate Division because "the intimidation or threats
did not take place in the presen[ce] of the jury."
Somewhat different language was used by Ms. Feathers;
at the end of her letter dated May 16, 200[2] she wrote
to Kimble:

       ...[T]he codefendant at first said he
would testify at your trial, even though he
might face perjury charges, but then he later
changed his mind and said he would not
testify for you.  If the judge or the
prosecutor had made statements at your trial

-12-

that substantially interfered with the
codefendant's free and voluntary choice to
testify, for example, making very
threatening, badgering kinds of statements
about being charged with perjury or losing
his plea deal if he testified for you, this
might be an issue worth pursuing.  But that
did not happen here.  Enclosed are relevant
portions of the transcript and two key cases.

I now make the further note that Ms. Feathers's April 22,
2002 letter explained to Kimble exactly how he could request
permission to file his own pro se supplemental brief.  Kimble
chose not to do so, even though he had briefed the issue in his
October 12, 2000 pro se motion, in which he had written to the
trial judge:

. . . It is well recognized that a defense witness
may not be singled out in advance of giving any
testimony and threatened by the court with the punitive
consequence of giving perjured testimony that the court
will personally administer (see, Webb v Texas, 409 US
95,97-98; 93 S Ct 351,353-54[]; 34 L Ed 330; People v
Ramos, 63 AD 2d 1009; 406 NYS 2d 123), nor may the
court, as in defendant[']s case, repeatedly badger a
defense witness into remaining silent or actively
encourage the defense witness not to testify (see US v
Arthur, 949 F 2d 211, 215-216).

The fact that Rogers was willing to come to court
to testify in the defendant[']s behalf, refusing to do
so only after the judge[']s lengthy and intimidating
threat, strongly suggest[s] that the court[']s comments
were the cause of Rogers['s] refusal to testify (Webb v
Texas, 93 S Ct 351 US Tex 1972).

The trial judge, not once but twice, gratuitously
single[d] out Rogers for a lengthy admonition on the
dangers of perjury.  However, the judge did not stop at
warning Rogers of the necessity to tell the truth.
Instead the judge implied that she expected Rogers to
lie, and went on to assure him that if he lied, he
would be prosecuted and convicted of perjury.

(Kimble's 10/12/00 *pro* *se* motion, Point 3, now annexed at the end of my 11/7/05 Memorandum and Order.)

In *People v. Siegel*, the high court of New York stated: "Our precedents approve the conduct of a trial court in advising a witness, who it can be reasonably anticipated will give self-incriminating testimony, of the possible legal consequences of giving such testimony and of the witness' Fifth Amendment privilege to refuse to testify."  87 N.Y.2d 536, 542-43, 640 N.Y.S.2d 831, 833 (1995) (citations omitted).  That is what happened when Justice Wittner questioned Rogers outside the presence of the jury.  At Tr. 36-45, Kimble was present - - but Rogers was not present - - during a discussion among the judge and the attorneys.  The transcript shows as follows:

THE COURT:  Will your client testify for the defendant or will he invoke his Fifth Amendment privilege?

MR. DUBIN [attorney for Rogers]:  He intends to testify.

THE COURT:  You informed him that he will be subject to perjury charges?

MR. DUBIN:  Several times.

THE COURT:  And also Federal jurisdiction?

MR. DUBIN:  I didn't advise him of that.

THE COURT:  It's a separate jurisdiction.

MR. DUBIN:  What do you mean?

THE COURT:  Any time you're arrested for drugs.

MR. DUBIN:  You mean as a Ricco[RICO] prosecution, as a predicate?

THE COURT:  In any prosecution.

MR. DUBIN:  I don't think that is - - I didn't tell him that, I didn't see that as a risk.  But I did tell him that he is to testify absolutely truthfully and that his personal feelings for his friend shouldn't get in the way of that, because he also has exposure.

THE COURT:  He does have exposure.

MR. DUBIN:  He has exposure to a possible perjury indictment, if the People feel that they want to ahead with that.

MR. TELLER:  Now that I, excuse me, may I be

-14-

heard, Judge?

    THE COURT:  Well, there's nothing before the court.  I'm waiting for Mr. Rogers.

    MR. TELLER:  There is something before the court.

    THE COURT:  I'm waiting for Mr. Rogers to come out and tell me that he's going to testify so that I can satisfy myself that he understood what he's doing.

    COURT OFFICER: [Mr. Rogers is now] Coming in.

(9/11/00 Tr. 44-45.)


In Rogers's presence, the judge did not mention any possibility of federal prosecution, nor any possibility that she might vacate his plea agreement.  Rogers's attorney said he had already warned Rogers about the possibility of a perjury prosecution, "several times."  When Rogers was personally in front of her, the judge merely verified that Rogers had heard and understood the possibility of a perjury prosecution, and that Rogers understood that he had the option to testify or to remain silent.  The transcript shows as follows:

EXAMINATION BY THE COURT

    Q.  Have you had an opportunity to speak as to [speak to] Mr. Dubin [your attorney]?

    A.  Yes.

    Q.  Okay, and the lawyer for Mr. Kimble intends to call you as a witness for this trial.  You don't have to testify, you have the option of invoking the Fifth Amendment privilege to remain silent, or testify.  If you do testify, you are subject to examination by both . . . Mr. Teller as well as cross examination by the prosecution.

    You understand that?

    A.  Yes.

    Q.  And they can use anything you said to me on the date of September 6th to cross-examine you.  Do you understand that?

    A.  Yes.

    Q.  And you can be, if you do not tell the truth under oath at trial, you could be subject to an additional crime of perjury.  Do you understand that?

-15-

A.  Yes.

Q.  And it's your intention to go forward, if called as a witness for Mr. Kimble, to testify?

A.  Yes.

Q.  And you understand that you can be charged with an additional crime of perjury?

A.  If I lie.

Q.  That's correct.

A.  Yes.

Q.  Has anyone forced you or induced you, in any way to testify?

A.  No.

Q.  Made any promises or threats or anything like that?

A.  No.

\*  \*  \*

Q.  . . . [O]nce you start testifying as to the incident that occurred you subject yourself to questions about the entire day, the entire incident.

Do you understand that?

A.  Yes.

Q.  Do you understand that you're going to be asked about the gun, the drugs, everything that occurred on that day, and you're willing to testify as to all the facts that occurred?

A.  Yes, I will answer the questions that is asked.

Q.  Pardon me?

A.  I will answer whatever questions that is ask[ed].

MR. CHALIFOUX [the prosecutor]:  If he's going to testify, if I may, I would like to know is he going to testify differently than the way he allocuted?

THE COURT:  Well, apparently he is, Mr. Chalifoux, because otherwise I don't think he will be called as a defense witness.

All right, why don't you [the court officer] put Mr. Rogers back [into the holding cell].

-16-

(9/11/00 Tr. 46-49.)


The court did not badger or threaten Rogers.  The court did not actively encourage Rogers not to testify.  After Justice Wittner addressed Rogers, Rogers forcefully stated that he would still testify for Kimble.  (Tr. 48-49.)


Two days later, Rogers's attorney reported that Rogers was "equivocating" about whether he would testify for Kimble (Tr. 273) and that Rogers wanted "the opportunity to speak to Mr. Teller." (Tr. 274.)  The judge granted that opportunity.  Mr. Teller then spoke with Rogers, and then Rogers's attorney reported that Rogers "does not want to testify" and "would invoke his Fifth Amendment." (Tr. 274.)  Mr. Teller made no claim that Rogers's last-minute refusal to testify had been caused by the judge's comments two days earlier.  Yet Mr. Teller had just spoken with Rogers, and therefore was in a good position to know (a) what factors had caused Rogers to change his mind, and (b) whether testimony from Rogers would help Kimble or hurt Kimble.  Mr. Teller may well have decided that he had obtained the best possible result:  His opening statement had told the jury that Rogers had pleaded guilty and "he will tell you that they were his drugs.  They were not Kimble's drugs." (Tr. 62.)  Yet Rogers was never exposed to cross-examination and therefore the jury never learned that Rogers's guilty plea had said, under oath: "Mr. Kimble and I came to the City of New York, and I told him that when I get there, I am going to make a purchase of cocaine. I purchased - - I purchased some cocaine.  He knew I had done that.  And he was there to assist me." (Plea Tr. 16.)  Rogers's 5/4/04 affidavit (which I am annexing to this Report) does not describe the conversation between him and Mr. Teller, and Mr. Teller has never submitted an affidavit.


In short, the record does not support Kimble's claim that "the trial court interfered with counsel in calling codefendant as a defense witness."  (Ground One, repeated in Ground Two.)


In my chambers file, I am holding the photocopies of Kimble's correspondence with his appellate attorney Ms. Feathers. He requested her to present the Appellate Division with the claim that the judge interfered with Mr. Teller calling Rogers as a defense witness.  Her letter of April 22, 2002 told Kimble:


... I did consider and research this issue.  ...

-17-

But the cases indicate that the court or the
prosecutor's actions are not improper unless they are
so extreme and intimidating that they drive the
potential witness off the stand.  That was not the case
here.

* * *

I don't know what issues you might want to raise
in a pro se supplemental brief.  If you think you might
want to do such a brief, you should write to the court
as soon as possible and describe the issues you would
like to raise and ask permission to file your own brief
(Clerk, First Department, 27 Madison Avenue, New York,
NY 10010).  If you want my help, for example, in
providing copies of documents I have but you don't, I
could do that; but by definition a pro se brief is one
the defendant does without his attorney, so I would not
have much of a role.


Kimble chose not to present the claim about Rogers to the
Appellate Division in a <u>pro</u> <u>se</u> supplemental brief, yet Ground
Three complains about Ms. Feathers's decision that she would not
present that claim.


It is well settled that the *Strickland* test for counsel
ineffectiveness also applies to appellate counsel.  *Mayo v.
Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).  Kimble must prove
that Ms. Feathers's representation was unreasonably deficient,
and also that it unfairly prejudiced the defendant.  *See
Strickland,* 466 U.S. 668, 687 (1984).  Kimble fails to make
either showing.


The mere failure to raise an appellate claim, even a "non-
frivolous" one, does not constitute deficient representation.
*Mayo*, 13 F.3d at 533 (*citing Jones v. Barnes*, 463 U.S. 745, 754
(1983).  Kimble complains that Ms. Feathers declined to argue
that the judge had interfered with trial counsel's calling Rogers
as a witness.  However, Ms. Feathers did advance several forceful
arguments.  She argued (a) that an unreasonable "seizure"
occurred when the police "insiste[d]" that the defendants switch
seats, and (b) that even the discovery of Kimble's gun did not
create probable cause to search the car.  (Exh. A.)


As I discussed above, Ms. Feathers gave Kimble her written
opinion that the trial judge's comments to Rogers did not amount

to improper threats or badgering. Moreover, if she had pressed
that argument and won, Kimble would have merely received a second
trial. If we make the huge assumption that Rogers would have
testified for Kimble at a second trial, nevertheless on cross-
examination the jury would have heard Rogers's earlier sworn
allocution: "Mr. Kimble and I came to the City of New York, and
I told him that when I get there, I am going to make a purchase
of cocaine. I purchased - - I purchased some cocaine. He knew I
had done that. And he was there to assist me." (Plea Tr. 16.)

Instead, Ms. Feathers made a sound professional judgment to
focus her brief on trying to suppress the gun and the drugs,
which would have led to immediate release rather than a second
trial.

Ms. Feathers wrote an excellent 26-page brief to the
Appellate Division. Moreover, her letter to Kimble told him
exactly how he could file a <u>pro se</u> supplemental brief to the
Appellate Division. He chose not to do so, even though he had
briefed the issue to the trial judge in his 10/12/00 motion.

Accordingly, the amended petition's Grounds One, Two and
Three fail.

## CONCLUSION AND RECOMMENDATION

For the reasons set forth above, I recommend that Judge
Stein deny Kimble's habeas corpus petition.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the
Federal Rules of Civil Procedure, any party may object to this
recommendation within 10 business days after being served with a
copy (i.e., no later than August 13, 2008), by mailing written
objections to the Pro Se Clerk of the U.S. District Court and
mailing copies (a) to the opposing party, (b) to the Honorable
Sidney H. Stein, U.S.D.J., at Room 1010, 500 Pearl Street, New
York, NY 10007 and (c) to me at Room 1360, 500 Pearl Street, New
York, NY 10007. Failure to file objections within 10 business
days will preclude appellate review. *Thomas v. Arn*, 474 U.S. 140
(1985); *Small v. Secretary of Health and Human Services*, 892 F.2d
15, 16 (2d Cir. 1989) (per curiam); 28 U.S.C. § 636(b)(1);
Fed.R.Civ.P. Rules 72, 6(a), and 6(d). Any request for an
extension of time must be addressed to Judge Stein.

_Douglas F. Eaton_

DOUGLAS F. EATON
United States Magistrate Judge
U.S. Courthouse
500 Pearl Street, Room 1360
New York, NY 10007

Dated:     New York, New York
           July 25, 2008

Copies of this Report and Recommendation (and of Rogers's 5/4/04
affidavit) are being mailed to:

Ricardo Kimble, DIN # 00A6577          Alyson Gill, Esq.
Riverview Correctional                 Assistant Attorney General
Facility                               State of New York
P.O. Box 247                           120 Broadway
Ogdensburg, N.Y. 13669                 New York, New York 10271-0332

Hon. Sidney H. Stein

Supreme Court of the
STATE OF NEW YORK COUNTY OF
NEW YORK
------------------------------x
People of the State of
New York

       - Against-

Ricardo Kimble,
          Defendant.
------------------------------x

Affidavit in support of
440 motion; filed upon
the Supreme Court of the
State of New York: By
Ricardo Kimble Indictment
number 3621/99

State of New York)
County of Orange ) ss.:

Herbert L. Rogers being duly sworn, deposes and says:

I am the Co-defendant of Ricardo Kimble Ind. No. 3621/99.

Ricardo and I were arrested on Janurary 10, 1999., and
while he participated in a jury trial, I struck a plea bar-
gain and received a sentence of 9 years to life.

At no time did I make an agreement with a prosecutor, a
Judge or anyone else that as a condiction of my plea bargain
I would not testify for Ricardo.
Nevertheless, on more than one occassion Judge Bonnie Wittner
repeatedly threatened this affiant with federal prosecution
in the event I should testify for Mr. Kimble.
As a result of those threats and others regarding the
vacature of my plea agreement I did not testify.

It is my firm belief that the outcome of Mr. Kimbles' trial
would have been more favorable to him if the Jury had heard my
testimony, particularly, but not limited to the facts that
Mr. Kimble never saw any drugs, never saw any money, was not
present when the drugs were purchased, never knew how much
money I had in my possession, nor how much drugs I intended to
purchase. I repeatedly tried to tell the court all of the
above facts but the Judge made it clear that she would not acc-
ept my plea unless I stated the facts in a way that was acc-
eptable to the court. In light of the forgoing I don't believe
Mr. Kimble received a fair trial.

_SWORN TO Before Me This_
_4_ DAY of _May_ _2004_
_Jane L Wood_
_Notary. Public_

_Herbert L. Rogers_
Herbert L. Rogers, 00A5604

JANE L. WOOD
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN ORANGE COUNTY
NO. 01W06078935
COMMISSION EXPIRES AUG 12, 2006